The People of the State of Illinois, Defendant in Error, v. Carl M. White and William C. Lund, Plaintiffs in Error.

Gen. No. 37,617.

Opinion filed February 13, 1935.

BENEDICT J. SHORT, of Chicago, for plaintiffs in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, HENRY E. SEYFARTH, JOHN T. GALLAGHER and MARSHALL V. KEARNEY, Assistant State's Attorneys, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

Defendants were indicted on a charge of conspiracy, tried before a jury in the criminal court of Cook county and found guilty. Defendant White was fined $1,000

and Lund was sentenced to six months in the county jail and in addition, a fine of $100 was imposed upon him.

The indictment upon which they were tried consisted of two counts. One count charges in substance that on the 15th day of March, 1933, defendants, without having applied for and obtained a license from the State of Illinois to make loans under the Small Loans Act (Cahill's Revised Statutes 1933, ch. 74, ¶ 27) did unlawfully conspire with each other and with other unknown persons to make loans in the amount of $300 and for less amounts and contracted for and charged a greater rate of interest than seven per cent per annum. The other count is similar to the one referred to, except that it charges that the persons mentioned conspired to make loans at a greater rate of interest than 42 per cent per annum. Defendant White has operated a loan office in the City of Chicago for a number of years, and formerly had obtained a license under the statute to conduct a small loans business, but there is no claim that he had a license to conduct such a business at the times mentioned in the indictment. The statute referred to in the indictment, and which it alleged defendants conspired to violate, provides that a higher rate of interest than seven per cent per annum may be charged by persons making loans of not more than $300, but that persons engaging in the business of making such loans shall obtain a license from the State of Illinois before conducting any such business. Paragraph 31, section 5 of the act, provides:

"Any person, co-partnership or corporation and all the several officers, directors, agents and employees thereof who shall, directly or indirectly, on behalf of themselves or others, violate or participate in or further any violation of the provisions of this Act shall be guilty of a misdemeanor and upon conviction thereof shall be punishable by a fine of not more than five

hundred dollars ($500) or, in the case of any such natural person, who acts on behalf of himself or others as aforesaid by imprisonment of not more than six (6) months, or by both such fine and imprisonment, in the discretion of the court.''

Defendant Lund testified in substance as follows: ''I work for White part of the time, four or five hours a day. I am paid $10 a week. Have been working for White since May, 1931. I have other employment. I am connected with the firm of Clark & Clark as investigator. First started to work for White in 1925. I was on a salary then. I have never had any financial interest in this business. White's business is collections. He does the money loaning end of the business himself. I have nothing to do with and have no connection with White's loaning money to people. I never did have anything to do with it. I don't have anything to do with the fixing of the rates of interest or paying money. White does that.''

Various persons were produced as witnesses for the State who had made loans from White. Will Smith, a witness, testified that he had made such a loan, and that he met Lund at the time he borrowed the money. Freeman Barnes testified that he borrowed money from this institution, and that he met Lund at a certain room at 35 South Dearborn street, where White conducted his business, and his testimony in regard thereto was as follows: ''I met Lund in room 505 at 35 South Dearborn street. I goes into his office and asked him for a loan. He said, 'O. K.,' I could get $15 and pay $18 back within six weeks. I told him, 'O. K.' I got the money and paid it all back within six weeks.'' This witness testified as to making other loans, but all of his conversations and contacts, other than the one mentioned, were with White or some other person in the office other than Lund. Emanuel Fivek testified in substance that he went to the White office to make a

loan, and that he spoke to Lund; that he told him he wanted $25, and that Lund said, "All right, fill out an application." White said to Lund, "Did you look up this fellow?" Lund said, "Yes, I got all the dope on him, he is O. K." White replied, "All right, we will make him a loan." This witness testified that they went into White's office and the loan was made. "Lund led me into White's office," he said. This witness testified to the fact that he had made other loans from White, but there is nothing in his evidence to indicate that Lund had anything to do with them, except that he testified that Lund was present when White made the loans. Henry F. Hobein testified that he had made various loans from the defendant White, and that he had filled out a form of application, that he first spoke to Lund about the loan and Lund asked him various questions, including inquiry as to how much he wanted to borrow; that Lund sent him to a woman in the office who made out a note, and that he was taken to White's office and received the money. This witness testified to nothing which indicates that Lund had anything further to do with the making of the loans, except as stated. A number of other witnesses testified to the fact that they had borrowed money from White, and that Lund participated in and had knowledge of the transactions, and the evidence shows that in all the cases interest charges were made in violation of the statute, but in so far as Lund's connections with the transactions were concerned, the testimony was substantially the same as in the cases mentioned. The notes in each case were made payable to White, the money borrowed was received from White, and White made the loans.

The grounds relied upon for reversal are that there is no sufficient evidence of the conspiracy, that the State's case is founded on information contained in certain books which were illegally seized, and that the court erred in giving to the jury certain instructions

offered by the State and refusing to give certain instructions offered by defendant. It must be borne in mind that the charge in the indictment is conspiracy between these defendants to make loans in violation of the Small Loans Act, and not that either of these defendants by violating the statute regarding the making of small loans became liable to the penalties imposed by the statute for such violation. There is no charge that Lund was an accessory of White's in the transactions. It is not denied by the State that White owned and operated the business, and that Lund was his employee, and it is not denied by the defendants that White, during the period in question, made many loans in violation of the law and was liable to the penalties imposed by the statute for such violation. Under these circumstances, and in view of the charge and the evidence adduced, the jury should have been carefully and properly instructed. Instruction No. 28, given on behalf of the State, is as follows:

"The jury is instructed that the burden is not on the State to prove that the defendants had no license as charged in the indictment and that the charge is to be taken by you as true unless you find from the evidence that the defendant has established his possession of such license." This instruction assumes that both defendants were required to have a license, and is, therefore, misleading and confusing in view of the fact that there is no suggestion that defendant Lund, being a mere employee of White, was required to have a license. The cases cited by the State in support of this instruction are not in point as they might be if this were a direct charge of the violation of the statute by these defendants. We are of the opinion that on the record before us, the judgment should be reversed and the cause remanded for a new trial.

*Reversed and remanded.*